1   XAVIER BECERRA, State Bar No. 118517
    Attorney General of California
2   STEPAN A. HAYTAYAN, State Bar No. 205457
    Supervising Deputy Attorney General
3   JONATHAN M. EISENBERG, State Bar No. 184162
    Deputy Attorney General
4   AMIE L. MEDLEY, State Bar No. 266586
    Deputy Attorney General
5    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013
6    Telephone:  (213) 576-7476
     Fax:  (213) 897-5775
7    E-mail:  Amie.Medley@doj.ca.gov
    *Attorneys for Alex Padilla, California Secretary of*
8   *State*

9              IN THE UNITED STATES DISTRICT COURT

10           FOR THE EASTERN DISTRICT OF CALIFORNIA

11                       SACRAMENTO

12

13  | **ROQUE "ROCKY" DE LA FUENTE,** | 2:16-cv-02877-JAM-GGH |

14                         Plaintiff,    **DEFENDANT CALIFORNIA
                                         SECRETARY OF STATE ALEX
15            v.                         PADILLA'S POST-HEARING BRIEF
                                         REGARDING STANDING ISSUES AND
16                                       APPROPRIATENESS OF INJUNCTIVE
    **ALEX PADILLA, in his official capacity as**   **RELIEF**
17  **the Secretary of State of the State of**
    **California,**                      Dept:         6
18                                       Judge:        Honorable John A. Mendez
                         Defendant.     Trial Date:    None Set
19                                       Action Filed:  12/7/2016

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

                                                                                          **Page**

3    INTRODUCTION ............................................................................................................. 1

4    LEGAL STANDARD ....................................................................................................... 1

     ARGUMENT ..................................................................................................................... 2

5        I.      De La Fuente Has Not Sufficiently Alleged an Injury-in-Fact .............................. 3

6                A.      De La Fuente's Allegations Do Not Establish a Concrete,
                         Particularized Injury for Any Claim Averred ............................................. 3

7                B.      De La Fuente's Allegations Do Not Establish an Actual, Imminent
                         Injury .......................................................................................................... 4

8                        1.      With Respect to the Elector Qualification Clause Claim .................. 4

9                        2.      With Respect to the Equal Protection Clause Claim ....................... 5

10       II.     De La Fuente Has Not Alleged an Injury Fairly Traceable to the
                 Secretary's Conduct ............................................................................................. 7

11               A.      With Respect to the Elector Qualification Clause Claim ............................ 7

12               B.      With Respect to the Equal Protection Clause Claim .................................. 8

13       III.    De La Fuente Has Not Requested Relief that Would Redress Any Injury ............. 8

     CONCLUSION ................................................................................................................. 10

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2
**Page**

3  CASES

4  *Barnes v. Healy*
5      980 F.2d 572 (9th Cir. 1992).................................................................................9

6  *California Pro-Life Council, Inc. v. Getman*
7      328 F.3d 1088 (9th Cir. 2003)...............................................................................2

8  *De La Fuente v. Padilla*
       No. 2:16-cv-03242-MWF-GJS (C.D. Cal. 2016)....................................................4

9  *Gest v. Bradbury*
10      443 F.3d 1177 (9th Cir. 2006)................................................................................6

11  *Joyner v. Mefford*
        706 F.2d 1523 (9th Cir. 1983)...............................................................................2
12
    *Lujan v. Defenders of Wildlife*
13      504 U.S. 555 (1992)...............................................................................1, 2, 3, 6

14  *Martinez v. Wilson*
15      32 F.3d 1415 (9th Cir. 1994)..............................................................................6, 9

16  *Metro-Goldwyn-Mayer Studios, Inc. v. Grosker, Ltd.*
        518 F.Supp.2d 1197 (C.D. Cal. 2007) ..................................................................9
17
    *N.L.R.B. v. Express Pub. Co.*
18      312 U.S. 426 (1941)...............................................................................................9

19  *Spokeo, Inc. v. Robins*
20      __ U.S. __, 136 S. Ct. 1540 (2016)........................................................................3

21  *Stevens v. Harper*
        213 F.R.D. 358 (E.D. Cal. 2002) ......................................................................2, 4
22
    *Townley v. Miller*
23      722 F.3d 1128 (9th Cir. 2013)...............................................................................2

24  *Trafficschool.com, Inc. v. Edriver Inc.*
        653 F.3d 820 (9th Cir. 2013).................................................................................9
25

26  STATUTES

27  Cal. Elec. Code § 201.......................................................................................5, 7, 8
28

## TABLE OF AUTHORITIES
### (continued)

Page

**CONSTITUTIONAL PROVISIONS**

U.S. Constitution
   Art. II, § 1, Cl. 2 ............................................................................................................. *passim*
   14th Am. .......................................................................................................................... *passim*

DEFENDANT'S POST-HEARING BRIEF RE STANDING ISSUES
AND INJUNCTIVE RELIEF (2:16-cv-02877-JAM-GGH)

**INTRODUCTION**

1
2    Plaintiff Roque "Rocky" De La Fuente ("De La Fuente") has sued Defendant Alex Padilla,
3    California Secretary of State (the "Secretary"), regarding alleged constitutional violations in the
4    administration of the 2016 California General Election for President of the United States.  De La
5    Fuente's first amended complaint, filed February 2, 2017, makes two claims.  *First*, De La Fuente
6    alleges that for the 2016 California General Election ballot the Secretary improperly enforced
7    against committed presidential electors for De La Fuente as a write-in candidate for President of
8    the United States additional administrative requirements beyond what is allowed by the Elector
9    Qualification Clause, Article II, Section 1, Clause 2, of the U.S. Constitution (the "Elector
10    Qualification Clause").  *Second*, De La Fuente alleges that the Secretary selectively enforced
11    California's requirements for certifying the above-mentioned electors, thus violating De La
12    Fuente's right to equal protection of the laws, under the Fourteenth Amendment of the U.S.
13    Constitution.

14    At the hearing in this case on May 2, 2017, the Court express concern about whether De La
15    Fuente has standing to bring those claims, and whether the Court would be able to grant equitable
16    relief to address any associated alleged injury.  The Court then requested the present filing to be
17    filed by today.

18    The Court's concerns are well-founded.  De La Fuente has not satisfied any of the three
19    *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), requirements for standing—(1) an injury in
20    fact, (2) a causal connection between the injury and the conduct complained, and (3) that the
21    injury will likely be redressed by a favorable decision.  *First*, De La Fuente's allegations
22    regarding his intended 2020 presidential run are not sufficient to establish a concrete,
23    particularized injury that is actual or imminent.  And, *second*, even if De La Fuente has
24    adequately allege an injury, that injury cannot be traced back to the Secretary's conduct in
25    administering California's statutory requirements for write-in candidates' putative presidential
26    electors in the 2016 General Election.  *Third*, the equitable relief requested in the first amended
27    complaint is not specific enough to lead to the redress of any such alleged injury.  Accordingly,
28    the entire first amended complaint should be dismissed.

1                         **LEGAL STANDARD**

2       To satisfy the U.S. Constitution's Article III case-or-controversy requirement, a plaintiff

3 have suffered a constitutionally cognizable injury-in-fact. *Cal. Pro-Life Council, Inc. v. Getman*,

4 328 F.3d 1088, 1093 (9th Cir. 2003). "To establish standing, a plaintiff must demonstrate (1) that

5 he[/she/it] suffered an injury in fact, *i.e.*, an invasion of a legally protected interest that is (a)

6 concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) that

7 there is a causal connection between the injury and the conduct complained of, such that the

8 injury is fairly traceable to the challenged action of the defendant; and (3) that the injury will

9 likely be redressed by a favorable decision." *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir.

10 2013) (citing *Lujan*, 504 U.S. at 560-561).

11       In considering whether to dismiss a case for lack of standing, "the trial court must accept as

12 true all material allegations of the complaint, and must construe the complaint in favor of the

13 complaining party." *Stevens v. Harper*, 213 F.R.D. 358, 370 (E.D. Cal. 2002) (quoting *Warth v.*

14 *Seldin*, 422 U.S. 490 (1975)). An injury in fact must be pled in sufficient detail to allow the court

15 to determine what specific injury has occurred, whether it will continue in the future, and whether

16 the injury may be remedied by equitable relief. When considering the sufficiency of standing

17 allegations, "the court is not obliged to accept allegations of future injury which are overly

18 generalized, conclusory, or speculative." *Stevens*, 213 F.R.D. at 370. Alleging an injury that

19 other people might encounter in the future is also not sufficient to establish standing. *Id.* Instead,

20 "[c]ourts require a plaintiff to have a 'personal stake' in the outcome of a case 'to warrant [the]

21 invocation of federal-court jurisdiction and to justify the exercise of the court's remedial powers

22 on [the plaintiff's] behalf." *Joyner v. Mefford*, 706 F.2d 1523, 1526 (9th Cir. 1983) (citing *Warth*,

23 422 U.S. at 498).

24                          **ARGUMENT**

25       The allegations in De La Fuente's amended complaint are not sufficient to establish

26 standing under the three-pronged test in *Lujan v. Defenders of Wildlife*. *First*, De La Fuente has

27 not alleged that a concrete, particularized injury is actual or imminent. In fact, De La Fuente's

28 allegations regarding the 2020 presidential election are speculative at best. *Second*, De La Fuente

1    has not alleged that any injury resulted directly from, or is fairly traceable to, the Secretary's

2    largely ministerial actions of administering California's procedures for certifying would-be

3    electors for write-in presidential candidates. *Third*, the first amended complaint's prayer for relief,

4    which would result in a vague injunction requiring the Secretary to enforce the California

5    Elections Code without violating the Elector Qualification Clause or the Equal Protection Clause,

6    would not redress any injury that De La Fuente has suffered or will suffer in the future. As such,

7    the first amended complaint should be dismissed in its entirety.

8    I.    DE LA FUENTE HAS NOT SUFFICIENTLY ALLEGED AN INJURY-IN-FACT

9         A.    De La Fuente's Allegations Do Not Establish a Concrete, Particularized
              Injury for Any Claim Averred
10

11        For an injury to be particularized, it "must affect the plaintiff in a personal and individual

12   way." *Spokeo, Inc. v. Robins*, __ U.S. __, __, 136 S. Ct. 1540, 1547 (2016). To be concrete, the

13   "injury must be '*de facto*'; that is, it must actually exist." *Id.* "[T]he 'injury in fact' test requires

14   more than an injury to a cognizable interest. It requires that the party seeking review be himself

15   among the injured." *Lujan*, 504 U.S. at 563.

16        Though De La Fuente amended his complaint to add allegations regarding his intention to

17   run for President again in the 2020 election, those allegations are still insufficient to establish an

18   injury will actually occur and will affect De La Fuente personally. De La Fuente has not

19   sufficiently pleaded, and surely could not sufficiently plead, that the Secretary's future

20   administration of California's requirements for write-in presidential candidates' would-be electors

21   in the 2020 election will actually inflict any injury at all, much less that the administration will

22   affect De La Fuente in "a personal and individual way." In fact, the allegations in the first

23   amended complaint do not establish that De La Fuente will even avail himself of the write-in-

24   candidate procedures during the 2020 presidential election. He alleges that "he intends to seek

25   the 2020 Democratic Party nomination for President of the United States" and that "in the event

26   he does not secure the 2020 Democratic Party nomination for President of the United States, he

27   will run as an independent and/or write-in candidate for President of the United States in the 2020

28   general election." First Am. Compl., ¶¶ 5-6. In the event that De La Fuente wins the Democratic

1  Party nomination in 2020, he will not need to rely on California's write-in-candidate procedures.

2  Likewise, if De La Fuente does not win the Democratic Party nomination in 2020, and instead

3  secures a place on the general-election ballot as an independent candidate by submitting a

4  nominating petition with the required number of voter signatures, he still will not avail himself of

5  the write-in-candidate procedures.[1]  In either of these scenarios, De La Fuente himself would not

6  be effected by the Secretary's administration of the California Elections Code provisions

7  challenged here, meaning that it is at best speculative that De La Fuente would have standing to

8  challenge those laws.

9     **B.     De La Fuente's Allegations Do Not Establish An Actual, Imminent Injury**

10         Standing also requires that the alleged injury be actual and imminent; "[t]o establish

11  jurisdiction, the plaintiff must clearly allege specific facts establishing an imminent risk of

12  substantial and irreparable harm." *Stevens*, 213 F.R.D. at 370 (citing *Whitmore v. Arkansas*, 495

13  U.S. 149, 155 (1990)).  De La Fuente has not done so in this case.  With the 2020 presidential

14  election still over three years away, any injury that De La Fuente might face at that time is not

15  imminent.  In fact, as shown above, the allegations regarding De La Fuente's intended 2020

16  presidential bid do not show that the supposed injury will ever occur.  De La Fuente may secure

17  the Democratic Party nomination for President in 2020, or may run as an independent candidate.

18  Because these various options for obtaining a place on the ballot mean that De La Fuente may not

19  actually use the write-in-candidates procedures at all, he has failed to allege that the Secretary's

20  administration of those laws will cause him any injury in the future.  Those allegations are

21  hypothetical and conjectural and cannot establish that there is an actual or imminent injury.

22         **1.     With Respect to the Elector Qualification Clause Claim**

23         Even if De La Fuente had not alleged that running as a write-in presidential candidate is

24  only a contingency plan should his other plans fail, it would still be speculative to assume that the

25  

26  [1] In a separate, ongoing lawsuit in the U.S. District Court, Central District of California, De La Fuente challenges California's requirement that independent presidential candidates seeking ballot placement on a general-election ballot must gather signatures from registered

27  voters in a number equal to 1 percent of the eligible registered voters in the previous general election.  *De La Fuente v. Padilla*, No. 2:16-cv-03242-MWF-GJS (C.D. Cal. 2016).

28  

4

1    same alleged issue with verifying the identities and addresses of De La Fuente's proposed

2    electors will happen again.  De La Fuente alleges that he "will timely file a slate of 55 presidential

3    electors . . . comprised entirely of individuals recruited by plaintiff in 2016 and included on

4    plaintiff's slate of 57 presidential electors that defendant refused to certify for the 2016

5    presidential election."  First Am. Complaint, ¶ 19.  However, it is inherently unknowable that  De

6    La Fuente could have the same 57 people serve as potential electors (55 being the number

7    required to become a certified write-in candidate) agree to serve in such positions in 2020.  Illness

8    or death might get in the way.  Some people may move out of state or decide to support a

9    different party or candidate in 2020.  Therefore, it is, at best, conjecture to assume that De La

10   Fuente will encounter the same issues with his proposed presidential electors in 2020 as De La

11   Fuente allegedly faced in 2016.

12              **2.    With Respect to the Equal Protection Clause Claim**

13        With regard to De La Fuente's equal-protection claim, he alleges that "[a]s a direct and

14   proximate result of defendant's selective enforcement of California and federal law, defendant

15   refused to tabulate any write-in votes cast for plaintiff for President of the United States in the

16   2016 California general election."  First Am. Compl. at ¶ 4.  The basis for this claim is that the

17   Secretary allegedly certified another presidential candidate's would-be elector who held an

18   "office of trust or profit" under federal law, in violation of the Elector Qualification Clause.  But

19   that information is irrelevant to the reasons behind or meaning of the Secretary's rejection of

20   several of De La Fuente's would-be presidential electors based on failure to comply with

21   California Elections Code section 201.  For one thing, De La Fuente has not alleged, nor could he

22   truthfully allege, that he was similarly situated to the other candidate.  Second, De La Fuente

23   cannot show that the alleged mistreatment that he suffered was caused by or revealed by the

24   alleged better treatment of the other candidate.  Therefore, De La Fuente's standing problem

25   bedevils the equal-protection claim here, as well.

26        Furthermore, De La Fuente's allegations regarding an injury suffered in the 2016 election

27   hardly demonstrate that a similar injury will occur in 2020.  "Past exposure to illegal conduct

28   does not in itself show a present case or controversy regarding injunctive relief . . . if

1    unaccompanied by any continuing present adverse effects." *Lujan*, 504 U.S. at 564 (citing *City of*

2    *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). De La Fuente has alleged no such continuing

3    effects here. There is a long chain of merely possible events, all of which must occur for the

4    alleged 2016 harm to be inflicted again in 2020. Only *if* in 2020 De La Fuente again runs as a

5    write-in candidate for President, and *if* De La Fuente's proposed slate of electors again includes

6    the same people whose voter registrations *still* cannot be verified based on the information

7    submitted, and (for purposes of the equal-protection claim) *if* the Secretary again certifies one or

8    more of another presidential candidate's proposed electors despite alleged non-compliance with

9    relevant election rules, *then* De La Fuente *might* suffer the same injury in 2020 that he allegedly

10   suffered in 2016. Obviously, that scenario s simply too speculative to support standing in this

11   case.

12          A separate problem is that standing may not be based on an assumption that a government

13   official will misinterpret the law or refuse to comply with it. "[I]n determining whether there is a

14   continuing threat to the [plaintiffs'] interests, we must assume the Secretary will interpret the law

15   correctly and obey it." *Martinez v. Wilson*, 32 F.3d 1415, 1419 (9th Cir. 1994). De La Fuente's

16   Equal Protection Clause claim posits that the Secretary, "acting on an illegitimate animus,

17   intentionally imposed requirements on the certification of plaintiff's 2016 slate of presidential

18   electors which defendant selectively chose not to enforce against slates of presidential elector[s]

19   filed by other candidates in 2016." First Am. Complaint, ¶ 3. The Secretary's alleged

20   "illegitimate animus" is described as "political animus against plaintiff for his prior opposition to

21   the nomination of Hillary Clinton by the Democratic Party for President of the United States and

22   his continued opposition to the election of Hillary Clinton as President of the United States and

23   the fear that plaintiff would dilute Hillary Clinton's vote with Hispanic voters." First Am.

24   Compl., ¶ 36. It would be speculative to assume that these very specific alleged circumstances

25   from 2016 (taken as true for purposes of this motion) will be repeated in 2020; De La Fuente has

26   provided no reason that would convert such speculation to likelihood or to certainty the

27   Secretary's intentional violation of De La Fuente's equal-protection rights in the next presidential

28   election. *See Gest v. Bradbury*, 443 F.3d 1177, 1182 (9th Cir. 2006) ("[T]he possibility that the

1  Secretary of State will, in the future, apply unwritten rules . . . is hypothetical and too speculative
2  to confer standing").
3      In sum, De La Fuente has not sufficiently pleaded that he faces an actual, imminent injury
4  in connection with his intended 2020 presidential campaign.
5  **II.  DE LA FUENTE HAS NOT ALLEGED AN INJURY FAIRLY TRACEABLE TO THE**
   **SECRETARY'S CONDUCT**
6
7      **A.    With Respect to the Elector Qualification Claus Claim**

8      As explained above, De La Fuente has not sufficiently pleaded an injury in fact. Thus, it
9  follows that De La Fuente also has not alleged any injury that may fairly be traced back to the
10  Secretary's administration of California Elections Code section 201, governing write-in
11  presidential candidates, in the 2016 election. De La Fuente alleges in his first amended complaint
12  that during the 2016 presidential election "defendant enforced and continues to enforce additional
13  qualifications beyond those set forth for presidential electors in the Elector Qualification Clause."
14  First Am. Compl., ¶ 2. However, the only "additional qualification" alleged in the first amended
15  complaint appears to be the "requirement" that "presidential electors [must] record an address
16  identical to an address recorded on a voter registration application." First Am. Compl., ¶ 34. The
17  problem for De La Fuente, for the purpose of establishing standing and on the merits, is that the
18  "additional requirement" is no such thing. The California Legislature has reasonably determined
19  that to serve as a presidential elector for a political party or candidate, a person must be a
20  registered voter. Cal. Elec. Code § 201. (Under the U.S. Constitution, the California Legislature
21  is entitled to adopt this requirement; as De La Fuente acknowledges later in the first amended
22  complaint, "[t]he Elector Qualification Clause vests in the state legislature . . . the manner of
23  appointment of presidential electors." First Am. Compl., ¶ 35.) Enforcing this requirement by
24  confirming electors' voter registration information is not adding a qualification; failing to enforce
25  the requirement, by not checking that information, would be to disregard the California
26  Legislature's commands. De La Fuente has nothing to complain of here, and thus no standing to
27  challenge administration of the election rules.
28

### B.    With Respect to the Equal Protection Clause Claim

As discussed above, De La Fuente's equal-protection claim does not complain that the same law was enforced against him in his presidential run but not against another similarly situated presidential candidate. Instead, De La Fuente contrasts the Secretary's administration of California Elections Code section 201 to De La Fuente, to deny him write-in-candidate status, with the Secretary's alleged *refusal to enforce* a *different* statute in connection with a *partisan* candidate's slate of proposed electors (one of whom allegedly held an "office of trust or profit" in violation of federal law, and, therefore, should have been disqualified as a proposed elector). There is no congruity.

But even were De La Fuente's claim about administration of the same law with respect to the two similarly situated candidates, the consequences for De La Fuente would remain the same. De La Fuente's slate of electors would not have been certified, regardless of whether one of the other presidential candidate's proposed electors should not have been but was approved. Any injury that De La Fuente suffered as a result from being excluded from the certified list of write-in presidential candidates did not stem from the Secretary's alleged selective enforcement of the laws. De La Fuente's alleged harm of not having his write-in votes counted is not traceable to the Secretary's allegedly selective or differential enforcement of the law.

### III.    DE LA FUENTE HAS NOT REQUESTED RELIEF THAT WOULD REDRESS ANY INJURY

To remedy De La Fuente's alleged (and uncertain) injury under the Elector Qualifications Clause, De La Fuente asks that the Court "[e]nter injunctive relief against defendant enjoining defendant from enforcing additional qualifications for presidential electors beyond those set forth and permitted under Article II, Section 1, Clause 2 of the United States Constitution." First Am. Compl. at 9. This request for relief is flawed for failing to specify what alleged additional qualification the Secretary should be enjoined from enforcing. Similarly, to remedy the alleged Equal Protection Clause violation, De La Fuente asks the Court to "[e]nter permanent injunctive relief enjoining defendant from enforcing the laws governing the qualifications and certification of presidential electors in California in violation of rights guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." First Am. Compl. at 9.

1   This requested relief is also very broad, and does not specify the constitutional violation that must

2   be avoided.

3         Therefore, even assuming that the first amended complaint does allege an injury-in-fact

4   traceable to the Secretary's conduct, the broad injunctive relief that De La Fuente requests is not

5   appropriate. "[T]he mere fact that a court has found that a defendant has committed an act in

6   violation of a statute does not justify an injunction broadly to obey the statute . . . " *N.L.R.B. v.*

7   *Express Pub. Co.*, 312 U.S. 426, 435 (1941). As a matter of law, it must be assumed that the

8   Secretary, the public official charged with enforcing California's Elections Code, will do so in

9   such a way that will *not* violate rights guaranteed by the U.S. Constitution. *Martinez*, 32 F.3d at

10  1419. De La Fuente's prayer for relief is plainly inadequate.

11        Indeed, the deficient requested relief would do nothing more than require the Secretary to

12  follow the law. But "[b]lanket injunctions to obey the law are disfavored." *Metro-Goldwyn-*

13  *Mayer Studios, Inc. v. Grosker, Ltd.*, 518 F.Supp.2d 1197, 1226 (C.D. Cal. 2007). "When

14  injunctive relief is sought against a state agency or official, such relief must be no broader than

15  necessary to remedy the constitutional violation." *Barnes v. Healy*, 980 F.2d 572, 576 (9th Cir.

16  1992). A broad injunction of the kind requested here would not provide the Secretary with any

17  specific guidance regarding what conduct violated De La Fuente's constitutional rights in 2016

18  (assuming that there was any violation) or how to adjust his future administration of California's

19  election laws to avoid similar violations in the future.

20        This Court has discretion to craft whatever injunctive relief is deems appropriate, despite

21  the deficient relief requested in the complaint. *Trafficschool.com, Inc. v. Edriver Inc.*, 653 F.3d

22  820, 829 (9th Cir. 2013) ("The scope of an injunction is within the broad discretion of the district

23  court"); *Metro-Goldwyn-Mayer Studios, Inc.*, 518 F. Supp. 2d at 1208-14. However, De La

24  Fuente's first amended complaint does not provide enough details about the alleged injury, and

25  the likelihood that it will be repeated, to allow this Court to do so.

26        Because De La Fuente has failed to sufficiently allege any injury that may be redressed

27  through specific injunctive relief, the first amended complaint should be dismissed.

28

1

**CONCLUSION**

2      The allegations and requested relief in De La Fuente's first amended complaint are

3 speculative and non-specific. De La Fuente has not sufficiently pleaded an injury-in-fact that is

4 traceable to the Secretary's conduct, or that can be redressed by equitable relief. Accordingly, the

5 Court should dismiss the first amended complaint in its entirety.

6 Dated: May 9, 2017                              Respectfully Submitted,
                                                  XAVIER BECERRA
7                                                 Attorney General of California
                                                  STEPAN A. HAYTAYAN
8                                                 Supervising Deputy Attorney General
                                                  JONATHAN M. EISENBERG
9                                                 Deputy Attorney General

10                                                */s/ Amie L. Medley*
                                                  AMIE L. MEDLEY
11                                                Deputy Attorney General
                                                  *Attorneys for Alex Padilla, California*
12                                                *Secretary of State*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28